IN THE UNITED STATES COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

RECEIVED
JAN 29 2016 CAG
1-29-16
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Ronald Hinton (#R32517),
    Plaintiff,

v.

Marcus Hardy, et al.,
    Defendant.

Case No. 15 C 10240

Honorable Robert W. Gettleman

Judge Presiding.

## FIRST AMENDED COMPLAINT

Named Plaintiff, Ronald Hinton, pro se, for his First Amended Complaint against Marcus Hardy ("Hardy"), Troy Johnson ("Johnson"), Joel Dunmars ("Dunmars"), and John Doe ("Doe") (collectively "Defendants"), alleges and states as follows:

### INTRODUCTION

This Action is brought by Ronald Hinton, a prisoner of the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center ("Stateville"), pursuant 42 U.S.C. § 1983, to redress the deprivation of his right under the Federal Constitution. Contravening the Eighth Amendment, not to mention the U.S. Supreme Court, Defendants deprived Plaintiff of his rights to: (1) reasonable safety; (2) confinement in safe conditions; and (3) be free from sufficiently imminent dangers.

Stateville was a maximum-security facility, therefore, Plaintiff was forced to remain locked in a six-by-ten-feet cell for at least twenty-three hours a day. Subsequent to being assigned to cell B-825, Plaintiff discovered that, while removing a shelf from the cell, Stateville's maintenance department ("maintenance") had created a significant hazard by disregarding several metal bolts — used to anchor the shelf — dangerously protruding from the wall inside of the cell. Plaintiff suffered several minor injuries from the bolts, and made a plethora of written and verbal bolt-removal requests to Defendants. However, while fully cognizant of the maintenance-created hazard in Plaintiff's assigned cell, Defendants simply ignored Plaintiff's safety and well-being for nearly a year. Moreover, it was not until Plaintiff was severely injured by one of the protruding bolts, and required emergency surgery, that he was moved to a different cell and the bolts were purportedly "removed/grinded down."

## JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the acts and/or omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois.

3. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

4. This Court has authority pursuant to 42 U.S.C. § 1983 to award appropriate, actual, consequential, compensatory, and punitive damages, in addition to injunctive relief.

5. Plaintiff has never filed any other pro se Actions, and has exhausted all administrative remedies available to him prior to bringing this Civil Rights Action within the meaning of 42 U.S.C. § 1997(e)(a).

## PARTIES

6. Plaintiff Ronald Hinton is, and at all times relevant to this Complaint was, a prisoner of the IDOC at Stateville, Register Number R32517, 16830 South Broadway Street, Joliet, Illinois 60434.

7. Defendant Hardy was, at all times relevant to this Complaint, the Chief Administrative Officer, i.e., Warden, and an employee or contractor at Stateville. Hardy had overall managerial and administrative responsibilities regarding the daily operations at Stateville. Plaintiff sues Hardy in his individual and official capacities.

8. Defendant Johnson was, at all times relevant to this Complaint, the Chief Maintenance Officer and an employee or contractor at Stateville. Johnson had overall managerial and administrative responsibilities regarding maintenance at Stateville. Plaintiff sues Johnson in his individual and official capacities.

9. Defendant Dunmars is, and at all times relevant to this Complaint was, a correctional lieutenant and employee or contractor at Stateville. Dunmars had managerial

and administrative responsibilities regarding the housing unit in which Plaintiff was assigned. Plaintiff sues Dunmars in his individual capacity.

10. Defendant Doe was, at all times relevant to this Complaint, Assistant Warden of Operations and an employee or contractor at Stateville. Doe had managerial and administrative responsibilities regarding the daily operations of Stateville's housing units, as well as maintenance. Plaintiff sues Doe in his individual capacity.

## FACTUAL ALLEGATIONS

11. Stateville is a maximum-security prison in which two inmates are designated to cohabit in a six-by-ten-feet cell, and confined to the same for at least twenty-three hours daily.

12. Inmates were not allowed to choose the cell in which they are assigned/confined, and refusing to accept and/or comply with a cell assignment constituted a violation of IDOC rules punishable by disciplinary action.

13. Maintenance had removed the shelves from numerous cells in housing unit B ("B-house"), including cell B-825 where Plaintiff was eventually assigned and injured.

14. Upon information and belief, during the time relevant to this complaint, there were policies and/or procedures in place at Stateville that required the security staff to shake-down, i.e., search/inspect for contraband, safety/security hazards, etc., a cell prior to allowing inhabitation.

15. While Plaintiff moved his personal property into cell B-825, he noticed the metal bolts protruding from the wall inside of the cell, and he immediately alerted the gallery officer[1] to as much.

---

[1] Officer, i.e., member of the security staff, assigned to work on a specific gallery/tier and responsible for, inter alia, ensuring that the cells are safe and secure.

16. Prior to locking Plaintiff inside of the cell, the gallery officer visually acknowledged the protruding bolts, and stated that he would immediately notify the housing-unit supervisor, as well as maintenance.

17. On July 13, 2012, subsequent to several bolt-related injuries and unavailing requests to have the bolts removed, Plaintiff filed an emergency grievance to Hardy.

18. On July 23, 2012, Plaintiff forwarded a letter to Johnson regarding: (1) the bolts protruding from the wall inside of cell B-825 in B-house; (2) his minor injuries suffered as a direct result of the protruding bolts; and (3) his repeated requests to have the bolts removed.

19. On July 24, 2012, Plaintiff forwarded a letter directly to Dunmars, reiterating his bolt-removal request, after suffering another minor injury when he fell against the bolt while exiting the top bunk bed.

20. Ironically, the same day Plaintiff forwarded his bolt-removal request to Dunmars, Hardy and (upon information and belief) members of the John Howard Association were touring B-house, which included traversing the galleries/tiers and speaking with inmates.

21. As Hardy toured gallery eight, Plaintiff summoned him to cell 825, and fully apprised him regarding: (1) the bolts protruding from wall inside of the cell; (2) his numerous, albeit minor, injuries suffered due to the bolts; and (3) his myriad requests to have the bolts removed.

22. Hardy visually acknowledged the bolts protruding from the wall inside of Plaintiff's assigned cell, and after conceding to the clear hazard, he averred that the bolts would be removed in the near future.

23. On August 29, 2012, in light of the facts that neither the bolts had been removed, nor had Plaintiff received any responses regarding as much, he forwarded another emergency grievance to Hardy.

24. On September 19, 2012, Hardy, along with a deputy director for IDOC, toured B-house, and for a second time, Plaintiff apprised Hardy that: (1) the bolts were still protruding from the cell wall; (2) he, as well as his cellmate, had repeatedly suffered minor injuries from the bolts; and (3) his myriad bolt-removal requests were being disregarded.

25. On September 20, 2012, Plaintiff forwarded another bolt-removal letter to the security staff in B-house with supervisory authority.

26. On October 10, 2012, again, in light of neither a response nor remedial action regarding Plaintiff's bolt-removal requests, he forwarded a letter directly to Hardy which expressed that the bolts still had not been removed.

27. On October 25, 2012, while Hardy toured B-house and gallery/tier eight, Plaintiff asked Hardy why the bolts had not been removed, despite his promise to address/resolve the issue.

28. Hardy stated that he, as well as maintenance, was fully cognizant of the bolts protruding from the walls in numerous cell, before he reiterated his promise that the bolts would be removed.

29. On March 20, 2012, while exiting the top bunk bed, Plaintiff fell forward against the cell wall, causing the bolt to severely injure his eye.

30. As a direct result of said incident, Plaintiff was forced to undergo emergency surgery on his injured eye, as well as extensive medical care.

31. On April 12, 2013, in a response to Plaintiff's grievance regarding said incident, the counselor expressed that her investigations and observations revealed that there were "several metal pieces sticking out of the walls" of numerous cells in B-house.

32. On June 26, 2014, a grievance-officer report expressed that "the metal sticking out of the wall in Cell B825 was removed/grinded down" by maintenance.

33. Plaintiff was finally assigned to a different cell after suffering the eye injury, yet nearly a month after the hazardous bolts were purportedly "removed/grinded down," inmates then assigned to B825 averred, in signed affidavits, that the bolts were in fact still protruding from the wall.

## COUNT ONE - Hazardous Conditions of Confinement

Defendants violated Plaintiff's right to be free from being held in unsafe conditions where they not only introduced and/or acquiesced the introduction of hazardous conditions into Plaintiff's assigned cell, but also consciously and repeatedly disregarded Plaintiff's myriad requests to remedy as much after discovering and/or acknowledging the hazardous conditions.

34. Plaintiff repeats and re-alleges the allegations contained in paragraphs one through thirty-three as if fully restated here.

35. Maintenance clearly demonstrated conscious disregard for inmate and staff safety through a pattern of removing shelves, yet systematically refusing to also remove the hazardous hardware, e.g., bolts, fasteners, etc., used to anchor the furniture to the wall.

36. As a prisoner of the IDOC, Plaintiff could not have chosen the housing unit or cell in which he would have liked to reside, as any refusal to occupy the unsafe cell would have been a violation of the rules, as well as resulted in harsh disciplinary action.

37. Plaintiff, together with a cellmate, was normally confined to the cell for at least twenty-three hours daily, where the limited area to walk not only was the same area where the bolts protruded, but also measured only approximately three by eight feet.

38. However, notwithstanding Plaintiff's numerous bolt-related injuries and bolt-removal requests to Defendants, he was severely injured and nearly lost an eye to the protruding bolt because Defendants simply refused to respond to Plaintiff's pleas for help and/or take action to ensure that the hazardous bolts were removed.

39. Under the auspices of institutional security, Defendants had a duty to ensure that the shelf and respective equipment, e.g., bolts, fasteners, etc., were properly and completely removed as to neither create a hazardous condition nor introduce material into the institution that could have been regarded as contraband and/or used to compromise the safety of the facility or its occupants.

40. As a direct consequence of Defendants' deliberate indifference to Plaintiff's health and safety, he was severely injured, and deprived of his right to reasonable safety and confinement in safe conditions as secured to him under the Eighth Amendment to the Federal Constitution.

WHEREFORE, Plaintiff respectfully asks that this Court:

A. Declare the conduct of Defendants to have violated the rights guaranteed to Plaintiff under appropriate Federal Law;

B. Grant Plaintiff injunctive relief in the form of, but not limited to, any medical care and special permits related to his eye injury;

C. Grant Plaintiff actual, consequential, compensatory, punitive, and any other damages that the Court may deem appropriate against Defendants;

D. Award Plaintiff all costs and fees incurred by bringing this Action; and

E. Enter such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff requests jury trial on all issues so triable.

Date: January 21, 2016

Respectfully Submitted,

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

*Ronald Hinton*

Ronald Hinton
Reg. No. R32517
Stateville Corr. Ctr.
P.O. Box 112
Joliet, IL 60434

*Ronald Hinton*
Ronald Hinton, Reg. No. R32517